OPINION OF THE COURT
Michael A. Corriero, J.
On May 5, 1982 at approximately 10:20 p.m., Katherine Streletsky, an 89-year-old patient of the Rego Park Nursing Home was transported, at the direction of her physician, by private ambulance, to Flushing General Hospital for emergency treatment for congestive heart failure. When the ambulance arrived at the hospital’s parking lot entrance to the emergency room it was met by a nurse on duty in the emergency room who advised the ambulance attendants to transport Ms. Streletsky to another hospital for treatment because, according to the nurse, no “beds” were available. The attendants promptly transported Ms. *261 Streletsky to Booth Memorial Hospital where she died several hours later of congestive heart failure.
The facts and circumstances surrounding the incident led to extensive media coverage as well as the commencement of a Grand Jury investigation by the District Attorney of Queens County.
On July 2, 1982, the defendant was served with a summons and accusatory instrument charging it with a violation of subdivision 2 of section 2805-b of the Public Health Law, an unclassified misdemeanor punishable by a fine not exceeding $2,000.
The accusatory instrument alleged that:
“Based upon official police investigation and on information supplied by Dr. John Rawlings that at the above mentioned date, time, and place, the defendant, a general hospital located in New York City; a city with a population in excess of one million, willfully refused to provide emergency medical care and treatment to Katherine Streletsky, a person in need of such care and treatment and who applied to defendant hospital for such care and treatment.
“Deponent further states that he is informed by Dr. Rawlings, the attending physician to Katherine Streletsky, that in the opinion of Dr. Rawlings the defendant hospital did, at the above mentioned date, time and place, have the proper equipment and personnel at hand to deal with Katherine Streletsky’s condition and that an actual medical emergency existed when Katherine Streletsky applied to the defendant hospital for emergency care and treatment.”
On July 7, 1982 the defendant, appearing through retained counsel, was arraigned in Part AR 2 of this court and the case was transferred that same day to Jury Part 3 for a possible disposition.
Later that day the case appeared in Jury Part 3 and the defendant, through its attorney, pleaded guilty to the above charge, and was sentenced to the maximum fine of $2,000.
On July 12, 1983 the defendant, through its present attorney, moved pursuant to CPL 440.10 for an order *262 vacating its judgment of conviction and withdrawal of its plea of guilty on the following grounds:
(1) The court lacked jurisdiction to accept the defendant’s plea of guilty because the information was insufficient on its face;[1]
(2) The court erred in accepting a plea of guilty because it failed to conduct a proper allocution;
(3) The defendant was, in fact, not guilty of the crime charged;
(4) The judgment was obtained in violation of the defendant’s constitutional rights under the Sixth Amendment of the United States Constitution in that the defendant was not represented by effective counsel;
(5) Newly discovered evidence; and
(6) The interests of justice require a vacatur of the plea and sentence.
On September 21, and October 14, 1983, the court conducted a hearing and permitted oral argument on the grounds alleged.
Based upon all of the credible evidence adduced, I find and conclude as follows:
I. THE JURISDICTION OF THE COURT
The defendant contends that the instant accusatory instrument was insufficient on its face on three grounds:
(1) It did not state all of the necessary elements of the crime charged in that it failed to allege the appropriate mental state necessary for the commission of the crime, and
(2) it did not allege sufficient facts to support the elements of this crime in that it did not specify in what manner the hospital refused to provide emergency care, by whom it acted and whether this person was acting as an agent of the corporation, and
(3) the accusatory instrument failed to provide sufficient “nonhearsay” allegations of fact establishing every element of the charge and the defendant’s commission thereof.
*263 The defendant contends that these defects are jurisdictional and therefore not waived by a plea of guilty.

The Elements of the Crime Charged

Subdivision 2 of section 2805-b of the Public Health Law in pertinent part provides as follows: “[N]o person actually in need of emergency treatment, as determined by the attending physician, shall be denied such treatment by a general hospital in cities with a population of one million or more for any reason whatsoever ” (Emphasis added.)
Subdivision 2 of section 12-b of the Public Health Law declares that a “willful” violation of any provision of the Public Health Law is a misdemeanor.
The defendant contends that these two sections read in conjunction require an assertion of “bad intent”, and that a mere allegation of a “willful” denial of emergency services is an insufficient allegation of the mental element necessary to commit the crime charged.
The court does not agree. Research does not reveal any previous prosecution under this statute, nor has any court had the opportunity to interpret the underlying legislative purpose or material elements of this offense. The legislative background of the statute reveals that it was designed to prevent hospitals from restricting access to emergency rooms and to prohibit the denial of treatment to patients brought to emergency rooms by volunteer ambulance corps.
The court agrees that sections 2805-b and 12-b of the Public Health Law should be read in conjunction to determine the elements of the crime charged in the instant case.
Such an analysis reveals that a hospital is guilty of a violation of subdivision 2 of section 2805-b when:
(1) It is a general hospital (as that term is defined therein), and
(2) the hospital willfully denies emergency treatment to a person, for any reason, and
(3) that person is actually in need of such treatment as determined by the attending physician.
The requirement that the denial be “willful” in the context of this legislation means no more than that the *264 denial be a deliberate and voluntary act of a person acting as the agent of the corporation. Contrary to defendant’s assertion that subdivision 2 of section 2805-b mandates a finding of “bad intent”, the section specifically prohibits a denial for any reason whatsoever. The statute provides no exception for a lack of “bad” intent. Assuming the existence of the other elements, a hospital would be liable if it refuses treatment for any reason whatsoever regardless of the motive for the denial of treatment.
Essentially, therefore, this statute imposes strict liability upon a public hospital for any deliberate and voluntary (i.e., willful) refusal to provide emergency treatment.
It appears that the Legislature desired to place considerable pressure on general hospitals, in cities such as New York, to exercise every precaution in carrying out their responsibilities with respect to emergency treatment. In so doing the Legislature, by enacting section 2805-b, has created a crime that does not require proof of fault. It is conclusively presumed, in effect, that no valid excuse exists that would justify such a hospital’s refusal of emergency medical care. Such an effect may be inconsistent with the basic premise that punishment should be imposed only where culpability exists. Nevertheless, the need to protect the public and insure proper and prompt treatment in emergency situations was obviously thought to outweigh the need for blameworthiness as a basis for criminal liability.
Consequently an allegation that the denial was “willful” is all that is required and the court finds that all of the elements of the crime were properly averred in the accusatory instrument.

The Sufficiency of the Factual Allegations

The standard of factual sufficiency applicable to a Criminal Court accusatory instrument is set forth in CPL 100.40, which provides that an accusatory instrument must allege sufficient facts which, if true, would establish every element of the crime charged.
This standard serves several purposes: from a jurisdictional perspective it serves to satisfy the court that proof of the facts alleged will establish a crime; from a due process *265 perspective it provides the defendant with adequate notice of the nature of the charges against him.
The instant accusatory instrument alleges in pertinent part that “on May 5, 1982 at approximately 10:45 P.M. at 45th Avenue and Parsons Blvd., County of Queens [the defendant] * * * willfully refused to provide emergency medical care and treatment to Katherine Streletsky.”
The defendant contends that this allegation is insufficient to establish the element of a willful denial of the emergency services required by the statute. The defendant further contends that the prosecutor should have provided details as to the manner in which the denial of such services occurred and, specifically, the identity of the person through whom the corporation is alleged to have acted, as well as an indication that this person acted within the scope of his/her authority. The court does not agree. While the prosecutor may have drawn this instrument more artfully by including greater detail, what was alleged is sufficient to meet jurisdictional and notice requirements.
It is frequently difficult to distinguish between what is a “fact” and what is a “conclusion”, for the distinction is principally one of degree. The sufficiency standard requires allegations of “fact”. Although the instant allegation is phrased in a conclusory manner, it is essentially a statement of fact sufficient to satisfy that requirement. The allegations set forth the time and place of the refusal, as well as the identity of the person denied treatment, and “who” refused to provide the treatment. Albeit the defendant is a corporation and can only act through it's human agents, the failure to identify that person does not render this information jurisdictionally defective. Certainly, the corporation defendant is entitled to know through whom it is alleged to have acted, and at the least the “substance” of that person’s conduct which encompasses the charge. That information, however, may be supplied in a bill of particulars which is designed to insure that the defendant is provided with sufficient information to properly prepare his defense (CPL 200.95, 100.45, subd 4).
It should also be noted that the defendant does not contend that it was actually unaware of the underlying facts, or that it was. prejudiced by the failure to allege these *266 facts. Indeed it was apparent at the time of the plea herein that it was aware of precisely this information.

The Necessity for Nonhearsay Allegations

The defendant contends that the “information” is “jurisdictionally” defective because the affidavit is based solely upon “hearsay” allegations.
CPL 100.40 (subd 1, par [c]) provides that an information is sufficient on its face when: “Non-hearsay allegations of .the factual part of the information and/or of any supporting deposition establish, if true, every element of the offense charged and the defendant’s commission thereof”.
The court agrees with the defendant that the allegations contained in the affidavit are based solely upon “hearsay”. The affidavit is based upon two sources: (1) “on official police investigation” and (2) “Dr. Rawlings.” There is no indication of the extent of Detective Katzr’s involvement in the “official police investigation”, consequently that “source” is ambiguous and too general to be of any legal significance in determining whether Detective Katzr had any direct knowledge of the facts alleged, except the statement of Dr. Rawlings. The second source is Dr. Rawlings who did not sign or swear to the affidavit, nor did he sign or swear to any supporting deposition. (Attached to the affidavit is an unsigned supporting deposition with Dr. Rawlings’ name typed thereon.) Therefore, the information obtained from Dr. Rawlings is also “hearsay”.
The prosecution contends, however, that the statement of Dr. Rawlings although hearsay represents an exception to the hearsay rule, in that it is an admission by an agent of the defendant. Therefore, the prosecution argues, the “information” is supported by “nonhearsay” allegations.
The court does not agree. The purpose of the requirement of nonhearsay allegations is to “deter” the bringing of baseless prosecutions by demanding that criminal proceedings be underpinned by the sanction of an oath and subject to the penalty of perjury if willfully false. (People v Jeffries, 19 NY2d 564, 567, quoting People ex rel. Livingston v Wyatt, 186 NY 383,391; People v Haskins, 107 Misc 2d 480, 482.) Research reveals that a judicially created exception to the “nonhearsay” requirement has been created by *267 various courts. (See People v Fields, 74 Misc 2d 109; People v Conoscenti, 83 Misc 2d 842; People v Haskins, supra.)
Those courts have construed the proscription against hearsay in CPL 100.40 as not to include hearsay which is admissible on trial. Each of those courts, however, was concerned with the use of a “business record” as a “source” of information necessary to support an element of the crime charged. In Fields (supra), the document affixed to the accusatory instrument was a certified copy of a teletype communication of a theft of a car considered on the element of consent. In Conoscenti (supra, p 844), the documents affixed to the accusatory instrument were “ ‘official records of the New York State Department of Labor’ ” considered on the issue of the defendant’s employment.[2] In Haskins (supra, p 481), the documents affixed to the accusatory instrument were a “‘benefit ledger transcript’” and an “affidavit * * * based on * * * payroll records” considered on the issue of defendant’s unlawfully obtaining unemployment benefits. The rationale of those courts in recognizing an exception for “business records” was based on the theory that “[s]ince hearsay evidence is admissible only if it satisfies some guarantee of reliability other than the sanction of the oath, the purpose of the rule [CPL 100.40] is fulfilled as long as the information is based on admissible hearsay.” (People v Haskins, supra, at pp 482, 483.)
Assuming, arguendo, the validity of this exception to the requirements of CPL 100.40, this court will not extend that exception to include a hearsay statement allegedly made by an “agent” of the defendant. In Fields (supra), Conoscenti (supra) and Haskins (supra), each court had before it the subject documents proffered for admissibility. Those courts could adequately rule on admissibility from a review of the face of those documents. The admissibility of the statement of Dr. Rawlings, however, depends upon several factors dehors the accusatory instrument, including whether or not the relationship of “agency” existed between Dr. Rawlings and the hospital. The court in Ha-skins (supra, p 483), cognizant of such problems, stated: “[A]bsent a revision of the statute by the Legislature at *268 least we should proceed with caution: if there is any doubt about the admissibility of hearsay, it should not be used to support an information.”
This court concludes, therefore, that the instant accusatory instrument is based entirely on hearsay. However, such an accusatory instrument is not jurisdictionally defective, provided the source of the hearsay information and the basis for its belief are identified in the instrument. (See People v Jeffries, supra; People v Tennyson, 19 NY2d 573.)
The underlying rationale for the jurisdictional requirement of identifiable hearsay is to provide the court with sufficient information to permit a finding of reasonable cause to believe that the defendant committed the crimes charged on the face of the instrument.
The instant accusatory instrument, reasonably read, adequately sets forth the source of Detective Katzr’s knowledge — “Dr. Rawlings” — as well as the grounds for his belief — “information supplied by Dr. Rawlings”.
Furthermore the factual allegations, although based on hearsay, were sufficiently pleaded to permit a finding of reasonable cause. Therefore, although based entirely on hearsay the instant instrument is not jurisdictionally defective. It is, however, “insufficient on its face” as an information (pursuant to CPL 100.40).

The Nature of the Accusatory Instrument:

“defective information” or “valid misdemeanor complaint”

The prosecution and defense both assume in their arguments and repeatedly refer to the accusatory instrument as an “information”. The court papers reveal that the affidavit of Detective Katzr is attached to two form “backs” which are indeed clearly labeled “information”.
Under the law prior to the enactment of the CPL an “information” was defined as “an allegation made to a magistrate, that a person has been guilty of some designated crime” (Code Crim Pro, § 145, subd 1). Thus the instant accusatory instrument, although containing hearsay, would have been referred to as an “information”. A plea of guilty to an information containing hearsay consti *269 tuted an admission of all well-pleaded facts and waived any objection to the hearsay basis of the allegations, provided the source and grounds for belief were disclosed therein. (See People v Tennyson, supra; People v Jeffries, supra; People v Scott;[3] 3 NY2d 148; People v James, 4 NY2d 482.)
Consequently, if the instant accusatory instrument were, as the defendant contends, a “defective information”, in that it failed to allege nonhearsay allegations, any objection on that basis would have been automatically waived by the defendant’s plea of guilty.
However, under the present CPL, the instant accusatory instrument is not a “defective information”, rather it is a “misdemeanor complaint”.
A misdemeanor complaint may rest on hearsay provided it sets forth reasonable grounds to believe that a crime has been committed. The court therefore deems the instant accusatory instrument to be a valid and sufficient misdemeanor complaint. As the Court of Appeals in People v Jacoby (304 NY 33, 39) reasoned, “Where justice and reasonableness pointed the way we have not hesitated to treat a paper, which was of particular form, as that which it was in truth and substance, in determining even our constitutional jurisdiction and thus bringing ourselves to the merits of a situation.”
Consequently, the defendant in this case pleaded guilty to an instrument which was, in effect, a misdemeanor complaint. Pursuant to the CPL, a defendant may validly plead guilty to a misdemeanor complaint (thus the CPL implicitly recognizes the waivability of the hearsay “defect”) provided he consents thereto or waives prosecution by information.
Such waivers are controlled by CPL 170.65 (subd 3), which in pertinent part provides as follows: “A defendant who has been arraigned upon a misdemeanor complaint may waive prosecution by information and consent to be *270 prosecuted upon the misdemeanor complaint. In such case, the defendant must be required, either upon the date of the waiver or subsequent thereto, to enter a plea to the misdemeanor complaint.”
The CPL does not require that such a consent or waiver take any specific form. In practice, counsel for the defense, generally upon inquiry by the court, orally waives prosecution by information prior to entry of a plea.
The minutes of the plea in the instant case reveal that the defendant, through counsel, did not specifically consent to prosecution on the basis of the misdemeanor complaint. Nor did the court specifically instruct the defendant, through counsel, of the right to be prosecuted by information. *
Can such a consent or waiver be presumed from the defendant’s conduct? The Court of Appeals, in People v Weinberg (34 NY2d 429), had occasion to determine if a waiver could be presumed from a defendant’s plea of not guilty and subsequent trial on a misdemeanor complaint. The court held (p 431) that a waiver could not be presumed from such conduct stating: “[I]n the absence of an effective admonition of the right to be prosecuted by information * * * a waiver or consent to prosecution by misdemeanor complaint cannot be presumed.”
Thus, in light of Weinberg (supra), is this court precluded from finding that the defendant waived or consented to prosecution by misdemeanor complaint? Is an effective admonition a sine qua non to such a waiver? This court holds, despite the language of Weinberg (supra), that under the circumstances of this case, as hereinafter developed, the defendant waived and consented to prosecution by misdemeanor complaint.
There are several significant distinctions between the instant case and Weinberg (supra).
First: the defendant in this case, unlike the defendant in Weinberg (supra), is a corporation. This is of special significance since the Weinberg court pointed to the statutory obligation imposed by CPL 170.10 (subd 4, pars [a], [d]) for the court to advise the defendant at arraignment of his right to prosecution by information, and further noted that *271 the lower court failed to advise the defendant at any time of this right. The court in the instant case was not under a similar duty. CPL 170.10 (subd 8) specifically provides: “Nothing contained in this section applies to the arraignment of corporate defendants, which is governed generally by the provisions of article six hundred.”
Review of the provisions of CPL article 600 reveals that there are no explicit or implicit obligations placed upon the court to instruct the corporate defendant as to its rights, generally or particularly to prosecution by information.
Therefore, the court in the instant case unlike the court in Weinberg (supra) was not under any statutory obligation to instruct a corporate defendant of the responsibility of the prosecution to convert the misdemeanor complaint into an information. This distinction in treatment appears to be based upon the legislative assumption that since a corporate defendant can only appear through counsel (CPL 600.20), specific instruction as to the rights enumerated in CPL article 170 is unnecessary. Moreover, it is the very function of counsel to advise the defendant of those rights, and customarily counsel does waive the reading of the rights contained in CPL article 170 at the time of arraignment.
Since the court was under no statutory obligation to advise the corporate defendant concerning its rights, the court’s failure to do so should not preclude a finding of an implied waiver provided other facts establish that the defendant knowingly and intelligently waived its right. The court finds that facts of this nature exist in the instant case. This defendant, unlike the defendant in Weinberg (supra), pleaded guilty to the misdemeanor complaint which contained as aforesaid well-pleaded legal and factual allegations, despite their hearsay nature. A plea of guilty to such an information under prior law would have waived any hearsay objection.
Moreover, and perhaps the most significant factor which satisfies this court of the defendant’s knowing and intelligent waiver of prosecution by information, the instant plea was the result of a negotiated agreement between the defendant and the District Attorney.
*272 The defendant sought this plea in order to avoid exposure to possible indictment for other more serious crimes and to stem the tide of adverse publicity. The court notes that the Grand Jury was considering various aspects of the law of homicide.
This plea represented thé result of negotiation and agreement between the District Attorney and the defendant through its counsel. When counsel for the defendant and the District Attorney appeared before this court, agreement had already been reached regarding all matters with the exception of sentence. Indeed, at the time of the plea defendant’s counsel produced a letter signed by the executive director of the defendant authorizing the defendant’s counsel to enter a plea of guilty to a violation of section 2805-b of the Public Health Law. '
Consequently, the defendant, faced with the possibility of indictment for more serious crimes and at the very least with an investigation into its policies and practices with respect to its emergency room procedures, sought to negotiate a plea to a reduced charge, in exchange for the termination of the pending Grand Jury investigation.
Certainly under these circumstances the court can reasonably presume a consent or waiver of prosecution by information, even in the absence of a specific admonition of that right, or a specific expression of the defendant’s waiver thereto. Accordingly, the court had jurisdiction to accept the defendant’s instant plea of guilty.
II. THE SUFFICIENCY OF THE ALLOCUTION
The defendant contends that the court erred in accepting the defendant’s plea on two grounds: (1) The court proceeded in the absence of an officer of the corporation, and (2) the factual admonitions made by defendant’s counsel at the time of the plea did not establish the necessary elements of the crime charged.
The defendant is precluded from raising these objections in a motion pursuant tp CPL 440.10, since the basis for the motion appears on the face of the record. (See People v Miele, 30 AD2d 539; People v Justiniano, 29 AD2d 569; People v Bristol, 19 AD2d 663; People v McGuire, 13 AD2d 794, cert den 368 US 866.)
*273 Rather, the appropriate remedy for these alleged failures is an appeal pursuant to CPL article 450 (cf. People v Montgomery, 24 NY2d 130). However, in light of the defendant’s claim of the ineffectiveness of its prior counsel the court will consider the merits of these contentions.
Á corporation appears in a criminal proceeding through counsel. A plea by a corporation must be entered by counsel. (CPL 340.20, subd 3; 600.20.)
The CPL does not require the presence of an officer of the corporation at the time of the entry of a plea. Nor are there any specific guidelines for conducting an allocution of a corporation. Throughout the CPL, corporations are treated differently from human defendants. The distinction appears based on the fact that a corporation appears through counsel and is not exposed to the same threat to liberty. Indeed, the CPL provides that a default judgment, in effect, can be entered against a corporation, in the event it fails to appear through counsel at the time it is required to plea to an accusatory instrument. (CPL 600.20.)
Therefore, the defendant’s contention that the plea is insufficient because an officer of the corporation was not present is totally without merit.
The court in this case conducted an allocution of the defendant corporation through its counsel. That allocution established that the corporate defendant, through a nurse employed in the emergency room, refused emergency treatment to a critically ill 89-year-old woman, who was sent to the hospital by her physician. The reason given by the nurse for the refusal of treatment was that the hospital had no beds available. However, as stated above, the court construes this statute as one of strict liability. If a hospital refuses emergency treatment for any reason it is liable, provided as here, the patient was in need of emergency treatment. Therefore, even assuming that no beds were available, and that fact was the motivation of the nurse’s conduct, it would not be a legal or sufficient reason to deny emergency treatment pursuant to this statute.
Subsequent to the admissions by counsel, a discussion appears concerning the precise nature of the instructions Dr. Rawlings provided to the nurse after he was informed by the nurse that no beds were available for his patient. *274 Defendant’s prior counsel stated that the physician told the nurse to try and contact the ambulance and divert it en route while the District Attorney’s version of the instructions included a direction to the nurse that “in the event that the ambulance could not be contacted by radio, that [the patient] be admitted to the hospital and, at the very least, stabilized.”
However, this “disagreement” was immaterial to the commission of the crime, since as the defendant admits, the hospital, once the patient arrived, was obliged to provide treatment and if necessary then transfer her to another hospital. Moreover, the defendant admits that the nurse’s decision to divert the ambulance upon its arrival, was not based on the “per se” instructions of the physician.
Consequently, the defendant’s assertion that this “disagreement” should have led the court to reject the plea is without merit.
III. THE DEFENDANT IS NOT GUILTY
The court is satisfied that the allocution of the defendant through counsel sufficiently established its guilt of the crime charged.
IV. EFFECTIVENESS OF COUNSEL
The court is satisfied that the defendant’s prior counsel provided meaningful representation in accordance with the standard set forth by the Court of Appeals in People v Baldi (54 NY2d 137).
V. NO “newly discovered evidence” was
PRESENTED TO THIS COURT
VI. THE INTERESTS OF JUSTICE
What does justice dictate in this case?
The defendant is a respected public institution providing vital services to the community. At the time of the plea the court lauded the defendant for the straightforward manner in which it addressed the incident and its consequent responsibility. It is hoped that the defendant will not be unduly penalized by other agencies for what appears to have been an isolated and singular transgression.
To permit the defendant to withdraw its plea, however, would not serve the ends of justice. The purpose of section *275 2805-b of the Public Health Law was to hold hospitals criminally liable for conduct which endangers the lives of patients in need of emergency care. As the prosecution so aptly observes, “there is no higher community interest than protecting human life.” Indeed this is the very function of the defendant. Consequently, this court finds that the interests of justice are best served through a denial of the defendant’s motion.

. This ground although not urged in the defendant’s original motion papers was subsequently raised in the defendant’s reply affidavit and memorandum.

. The court in People v Conoscenti (83 Misc 2d 842), although recognizing the exception held that the documents were based on “double hearsay” and denied their use under the exception.

. Dictum in People v Scott (3 NY2d 148,152) to the effect that a plea of guilty also waived an objection based on hearsay allegations that did not disclose the source thereof. This statement appears contrary to holding in People v Tennyson (19 NY2d 573). But see People v Redding (109 Misc 2d 487), wherein the court concludes the absence of a supporting deposition renders the accusatory instrument “jurisdictionally” defective in a double jeopardy analysis.