OPINION OF THE COURT
Herman Cahn, J.
Leonora Coe is charged in a two-count indictment with willful violation of health laws, in violation of Public Health Law § 12-b in that she is alleged to have violated Public Health Law § 2803-d and regulations enacted pursuant thereto, and with falsifying business records in the first degree in violation of Penal Law § 175.10. The case was tried before me without a jury. Motion was made to dismiss the indictment at the close of the entire trial.
The People have proven the following facts:
Coe is a registered nurse who was in charge of the third floor at the Isabella Geriatric Center prior to and on July 10, 1984. Erwin Gersh was a resident of the third floor at the Center. Coe was familiar with Gersh, and with his medical history, since he had been a resident at the Center for some time previous.
Gersh was an 86-year-old man who was somewhat senile. From time to time he had taken certain items such as papers of various kinds and put them into his pockets. He had a history of heart disease, and other illnesses. Gersh had difficulty expressing himself verbally.
On the afternoon of July 10, 1984, Coe was told that another resident of the floor claimed that two $5 bills were missing. Because Gersh had been known to have taken things in the past, Coe went to him and attempted to search through his pockets. Gersh became agitated and resisted the search. Coe stopped searching because of Gersh’s agitation and called a security guard. The guard, James Taylor, came to the area where Gersh was, and there was again an attempt made to search Gersh. Gersh still physically resisted and verbally objected to the search.
Taylor lifted a chair and banged it down in front of Gersh, thus causing a loud noise. Taylor then pinned Gersh’s arms to his sides while defendant searched his pockets. The search did not reveal the two $5 bills that defendant was looking for and she then left the area together with Taylor.
*809 A short time later, approximately five minutes, defendant returned and saw that Gersh had collapsed on a chair. He was gasping for breath. Defendant attempted to administer CPR and oxygen in order to revive Gersh but his attempts were unsuccessful. Gersh died.
Coe entered the following note in Gersh’s records: "Observed resident was extremely confused and talks incoherently. Suddenly became unresponsive and cyanotic; no pulse, no B/P; cardiac message and 02 3/L Min. has no effect. Supervisor informed and responded. Patient ceased breathing at 6:20/P. Dr. Hussain contacted. Resident was pronounced dead at 7:55/P by same. Family Dr. E. Sorell were unable to contact via phone. Post mortem care done. Body brought to morgue. L. Coe, R.N.”.
Coe was a registered nurse for a number of years before 1984. During her employment at Isabella, she had attended various in-service lectures relating to her responsibilities. Among those lectures were lectures about the requirements of law as to the treatment of patients, and more specifically the avoidance of mistreatment of residents. Some of the lectures covered the material specifically set forth in Public Health Law § 2803-d (7) and the regulations promulgated thereunder. This material is some times known as the "Patients’ Bill of Rights”. It was discussed at an in-service lecture, which Coe attended.
Public Health Law § 2803-d (7) describes acts of physical abuse, neglect or mistreatment of residents or patients in facilities such as the Isabella Geriatric Center. Under 10 NYCRR 81.1 (a) the term "abuse” is defined as "inappropriate physical contact with a patient or resident of a residential health care facility * * * Inappropriate physical contact includes, but is not limited to, striking * * * shoving”.
Under 10 NYCRR 81.1 (b) "mistreatment” is defined as, among other things, "inappropriate use of physical * * * restraints on * * * a patient or resident of a residential health care facility”.
In an effort to clarify for the public and for members of the health care profession the type of conduct which is deemed inappropriate, a document entitled a "Patients’ Bill of Rights” was drafted. This document contains 21 separate items and specifically relates to certain types of rights of a resident which should not inappropriately be violated by a health-care provider. Coe was aware of the document. She had *810 heard it discussed and it had been taught to her in a lecture at the Isabella Center. Attempting to search a resident over his stated objections is clearly inappropriate, when the object of the search is simply two pieces of paper. Coe was searching here not for some dangerous instrument nor for something whose loss would cause great damage or harm to someone but merely for two $5 bills. When Gersh objected to the search by attempting to verbalize his objections and by, in an aggressive manner, waving Coe away and attempting to prevent her from putting her hands in his pockets, such a search became an act of physical abuse and mistreatment as set forth in Public Health Law § 2803-d (7) and the regulations hereinabove alluded to. Furthermore, the restraint imposed by Taylor when he pinned Gersh’s hands to his back was mistreatment as defined by section 81.1 (b). The banging of a chair and causing a loud noise in order apparently to frighten, done by Taylor, was also mistreatment as defined by said sections.
The purpose of the statute and the regulations is to assure that persons who are old and/or infirm and who are entrusted to the health-care professionals are not abused. When an 86-year-old man’s pockets are searched, over his objections, that search, unless there is a compelling reason, violates the statute and the regulations thereunder.
Therefore, as to the first count of the indictment the People have proven facts sufficient to show a knowing violation by Coe of the statute. Such facts have been proven sufficient to warrant or permit a finder of the facts to find Coe guilty of the first count.
The term "willful” as used in Public Health Law § 12-b does not connote bad intention, i.e., intent to harm, but simply that the act: which is in violation of the Public Health Law is "deliberate and voluntary” as opposed to accidental (People v Flushing Hosp. & Med. Center, 122 Misc 2d 260, 264). "[W]ilfully” as used here means "consciously and deliberately done” not necessarily maliciously (People v Broady, 5 NY2d 500, 507).
Defendant contends that if Public Health Law § 12-b does not require a finding that the subject’s conduct was a willful attempt to violate the Public Health Law, the statute is unconstitutionally vague. Without such a requirement, argues defendant, the due process standard whereby a statute must "give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden” (United States v Harriss, *811 347 US 612, 617) is not met and the statute is thereby rendered unconstitutionally vague.
That the subject statute incorporates or makes reference to other legislative enactments or regulations promulgated by State agencies is neither impermissible nor exceptional. (See, Darweger v Staats, 267 NY 290; Silvian v Shang, 70 AD2d 704.) "When the Legislature itself makes a violation of such a rule a crime, it does not delegate its legislative power.” (People v Malmud, 4 AD2d 86, 91.) The Legislature has provided that willful violation of any Public Health Law is criminal. It has not left to any other body the determination of which violations shall be criminal and which shall not. (People v Ryan, 267 NY 133.) The legislation is sufficient for due process purposes so long as "[t]he standards or guides [are] prescribed in so detailed a fashion as is reasonably practicable in the light of the complexities of the particular area to be regulated” (Matter of Levine v Whalen, 39 NY2d 510, 515).
The Legislature, by Public Health Law § 12-b, made it explicit that any willful Public Health Law violation was a crime. The rules promulgated under the Public Health Law are, again, quite explicit. Any further explication via agency regulations only goes to describe the prohibited acts in even greater detail. The statute under which defendant was indicted then, is not at all vague and certainly provided defendant reasonable notice of what acts she legally could or could not perform.
Defendant argues that incidents such as that for which she has been indicted were commonplace at the Isabella Geriatric Center, that they are inevitable in a facility dealing with the kinds of patient who reside there and that searches took place quite frequently. There was testimony to that effect, at trial, by defendant and other Isabella employees. In the first place, the court, as a matter of fact, is not convinced as to the veracity of these statements. Secondly, searches which might occur under circumstances in which a greater danger was presented would be more easily justified. Third, it appears that with respect to those searches claimed to be commonplace, the degree of intrusion and abuse involved in such searches did not reach the level that they did here. Finally, and most importantly, however, the fact that such searches might ever take place, frequently take place or always take place does not validate an otherwise illegal procedure. It may well be that this incident reached the attention of the criminal justice system only because, in the end, a man had died. *812 In those instances which are equally violative of resident’s rights and equally contrary to standards of common decency but which do not result in visible harm to a patient, the acts are nevertheless illegal and subject to prosecution. A criminal act is not legitimized by the fact that others have, with impunity, engaged in that act. Defendant knew her actions were improper. She was instructed regularly as to the kinds of behavior which were proper, in regular nursing staff seminars. In fact, defendant concedes that the proper procedure to be followed when money was missing was to call a security guard and to file a report. This procedure was not followed. Defendant’s guilt, under count one of the indictment, has been established beyond a reasonable doubt.
Taylor, the security guard, was alluded to above. His actions with relation to Gersh, although not the responsibility of Coe, should have been noted by Coe in the nurses’ notes. Her complete omission of his action or of the fact that he was even present, is relevant to a consideration of whether she is guilty of the second count.
In count two defendant is charged with violation of Penal Law § 175.10. The falsification is said to have occurred by reason of defendant’s omission to state any of the facts relating to the search of Gersh, which facts are extremely relevant and should have been included in the note in order to make the note accurate. Clearly, the nursing notes which are the subject of count two, qualified as " 'business records’ ” as they are maintained to reflect Isabella’s activities with respect to patients. Furthermore, Isabella, as a practical matter, is required to maintain such notes. It can hardly be argued that Isabella is not an " 'enterprise’ ” as that term is defined in Penal Law § 175.00 (1).
The statute requires an expressed intent to defraud. However, the target of such attempt is not set forth. Defendant contends that it must be Isabella. However, this is not necessarily true, as it might just as well have been Gersh’s relatives, defendant’s supervisors or others. Intent to defraud anyone is sufficient.
The omission of the search from the discussion of Gersh’s death clearly makes the note misleading. This is specifically so when one analyzes the note and notes that the first sentence states: "Observed resident was extremely confused and talks incoherently. Suddenly became unresponsive” (emphasis added). This statement is simply false. It could only be true if *813 some reference to the search and the loud noise was included. Coe could not have known, even if true, that Gersh suddenly became unresponsive, since she left the room after the search and only returned after Gersh was already nearly unconscious. The nursing notes do not accurately reflect the events which took place. Although the People have proven sufficient facts at trial for the finder of facts to consider Coe’s guilt under section 175.10 the court will also consider a violation of Penal Law § 175.05 (falsifying business records in the second degree) as a lesser included offense.
The motion to dismiss is denied in its entirety.